## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| Motedata Corporation, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 2:26-cv-00038 |
| v. | § | |
| | § | |
| Powerfleet, Inc. | § | **Jury Trial Demanded** |
| | § | |
| *Defendant.* | § | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Motedata Corporation files this Complaint for patent infringement against Defendant Powerfleet, Inc. ("Defendant") alleging as follows:

### NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

### THE PARTIES

2.      Plaintiff **Motedata Corporation ("Motedata" or "Plaintiff")** is a Delaware Corporation with a principal place of business at 43211 Lucketts Road, Leesburg, VA 20176.

3.      Upon information and belief, Defendant **Powerfleet, Inc. ("Powerfleet")** Defendant Powerfleet, Inc. ("Powerfleet") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Woodcliff Lake, New Jersey. Powerfleet provides fleet management, vehicle telematics, and related data-driven products and services throughout the United States, including in Texas.

4.      Powerfleet maintains a physical presence in Texas. Powerfleet has identified 5700 Granite Parkway, Suite 550, Plano, Texas 75024 as a Powerfleet business address in filings with

---

the Federal Communications Commission and has publicly represented this same Plano address as a company location through business and professional listings. Powerfleet has also identified 2601 Network Boulevard, Suite 680, Hall Park C1, Frisco, Texas 75034 as a Powerfleet address in filings with the Federal Communications Commission in connection with the marketing and importation of Powerfleet products in the United States.

5.      Upon information and belief, Powerfleet designs, develops, markets, sells, offers for sale, provides, and supports fleet-management systems and associated hardware and software throughout the State of Texas, including within this judicial District. Powerfleet conducts such activities through its website at https://www.powerfleet.com and through its Powerfleet Unity platform, which utilizes vehicle telematics and tracking devices in combination with software applications and data-management features, as well as through related products and services offered under the brands "MiX by Powerfleet" (found at https://www.mixtelematics.com/us) and "Powerfleet (formerly Fleet Complete)" (found at https://www.fleetcomplete.com) (collectively, the "Accused Products").

6.      Powerfleet may be served through its current registered agent for service of process in the State of Texas, as reflected in the records of the Texas Secretary of State, or at any other agent or office designated by Powerfleet in compliance with applicable law.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

8.      Powerfleet is subject to personal jurisdiction in this Court. In particular, this Court has personal jurisdiction over Powerfleet because Powerfleet has engaged in substantial activities

within this State, including substantial marketing, offers to sell, and sales of products and services within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over Powerfleet because Powerfleet has committed acts giving rise to Plaintiff's claims for patent infringement within and directed to this District.

9.    Upon information and belief, Powerfleet has committed acts of infringement in this District and has one or more regular and established places of business within this District under the language of 28 U.S.C. § 1400(b). Thus, venue is proper in this District under 28 U.S.C. § 1400(b).

10.    Defendant Powerfleet has identified 5700 Granite Parkway, Suite 550, Plano, Texas 75024 as a Powerfleet business address in filings with the Federal Communications Commission and has publicly represented this same Plano address as a company location through business and professional listings. Plano is located within the Eastern District of Texas.

11.    Defendant Powerfleet has identified 2601 Network Boulevard, Suite 680, Hall Park C1, Frisco, Texas 75034 as a Powerfleet address in filings with the Federal Communications Commission in connection with the marketing and importation of Powerfleet products in the United States. Frisco is located within the Eastern District of Texas.

12.    Upon information and belief, Powerfleet has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) marketing, selling, offering for sale, providing, and supporting infringing products and services in this forum; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial District.

13.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because Powerfleet has committed acts of infringement in this District and maintains one or more regular and established places of business within this District.

## THE PATENTS-IN-SUIT

14.     This cause of action asserts infringement of United States Patent No. 7,956,742 ("the '742 Patent"), United States Patent No. 8,314,705 ("the '705 Patent"), and United States Patent No. 10,459,930 ("the '930 Patent") (collectively, the "Asserted Patents").

15.     The '742 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on June 7, 2011, from U.S. Patent Application No. 11/657,895, filed on June 24, 2007, naming Peter Lupoli, Jay P. Kesan, and Peter Cappello as co-inventors. The '742 Patent is a continuation-in-part of U.S. Patent Application No. 10/952,789, filed on September 30, 2004, and issued as United States Patent No. 7,388,488 ("the '488 Patent") on June 17, 2008. The '742 Patent is subject to a patent term extension under 35 U.S.C. § 154(b) of 1,158 days. A true and correct copy of the '742 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

16.     The '742 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 34–46.

17.     Motedata is the owner and assignee of all rights, title, and interest in and under the '742 Patent.

18.     The '705 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on November 20, 2012, from U.S. Patent Application No. 13/114,139, filed on May 24, 2011, naming Peter Lupoli, Jay P. Kesan, and Peter Cappello as co-inventors. The '705 Patent is a continuation-in-part of U.S. Patent Application No. 10/952,789, filed on September 30, 2004, and issued as United States Patent No. 7,388,488 ("the

'488 Patent") on June 17, 2008. A true and correct copy of the '705 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

19.    The '705 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 34–46.

20.    Motedata is the owner and assignee of all rights, title, and interest in and under the '705 Patent.

21.    Motedata has standing to sue for infringement of the '705 Patent.

22.    The '930 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on October 29, 2019, from U.S. Patent Application No. 15/811,926, filed on November 14, 2017, naming Peter Lupoli, Jay Kesan, and Peter R. Cappello as co-inventors. The '930 Patent is a continuation of the '870 Patent. The '930 Patent is subject to a terminal disclaimer. A true and correct copy of the '930 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

23.    The '930 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 34–46.

24.    Motedata is the owner and assignee of all rights, title, and interest in and under the '930 Patent.

25.    Motedata has standing to sue for infringement of the '930 Patent.

26.    The Patents-in-Suit generally relate to the use of tags and the association of said tags with individuals or entities to track and manage the individuals or entities.

27.    Around the fall of 2002 and early 2003, Mr. Lupoli and Dr. Kesan, who are long-time friends, began discussing technologies that might be used to track objects by using tags, such as radio frequency identification ("RFID") tags.

28.     Around May 2003, Mr. Lupoli and Dr. Kesan happened to be in Italy at the same time on different matters. Mr. Lupoli was on vacation in Tuscany, and Dr. Kesan (a long-time, distinguished professor of patent law and inventor on several other patents) was there to lecture at a conference in Pisa, Italy. The two friends spent most of their time in Italy working on their idea. Surrounded by the history and architecture of Italy, they recognized a need to track and manage valuable objects such as priceless paintings, rare wine bottles, expensive inventory, vehicles in a fleet, and even more valuable things like soldiers in the military or family members. They discussed their interests and explored potential solutions for tracking objects using hardware and software.

29.     After returning to the United States, Mr. Lupoli and Dr. Kesan continued discussing the capabilities and functionalities of their tracking system, brainstorming additional features and components, and considering ideas that others might find useful in a variety of industries and potential uses.

30.     In the fall of 2003, Mr. Lupoli and Dr. Kesan formed a company, called "Motedata" (as in "motes" (or specks) of data) to focus their development efforts and to be the owner of their intellectual property. They hired outside patent prosecution counsel and shared their work with them. These efforts led to the filing of the '449 Provisional Application in October of 2003.

31.     Around early 2005, Mr. Lupoli and Dr. Kesan began working with Peter Cappello, who was a Professor of Computer Science at the University of California, Santa Barbara. Mr. Cappello worked with Mr. Lupoli and Dr. Kesan to conceive of and refine certain aspects of their inventions, including the idea of using searches with ranked results to mine tag data. The three inventors continued to expand and refine their thoughts and ideas and developed more detailed

solutions. Motedata filed a continuation-in-part (the '742 Patent) naming all three gentlemen as inventors and a series of continuations based on the work of all three inventors.

32.    Motedata has filed and obtained more than 30 U.S. and foreign patents on various aspects of their invention—some of which (including the Asserted Patents) involve contributions by all three inventors and some include only contributions by Mr. Lupoli and Dr. Kesan.

33.    The Asserted Patents describe and claim the core components of the fleet management systems that many companies—including Powerfleet—use to monitor and track valuable assets such as vehicles.

34.    The Asserted Patents describe and claim eligible subject matter under 35 U.S.C. § 101. They describe and claim specialized hardware, such as tags that are associated with objects or entities and used to collect data for management and tracking purposes.

35.    Attached as **Exhibit 4** and incorporated by reference is the Declaration of Gregory J. Gonsalves, Ph.D., J.D., regarding Patentable Subject Matter under 35 U.S.C. § 101 in Support of Complaint by Motedata, Inc. ("Gonsalves Decl.").

36.    The claims of the Asserted Patents are not directed to an abstract idea. *See* Gonsalves Decl., ¶¶ 159–60, 173–74, 188–89, 204–05, 218–19, 233–34, 248–49.

37.    As explained by Dr. Gonsalves, the claimed systems and methods represent "concrete solution[s] for resolving particular problems that first arose with the development of networks hosting wireless devices." Gonsalves Decl., ¶¶ 151, 166, 181, 196, 211, 226, 241. These include: "how to retrieve and organize data associated with one or more wireless tags having sensors, to generate alerts based on the retrieved data, and to generate queries on the data" (*id.*, ¶ 151), "how to retrieve and organize static, dynamic, and temporal data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data" (*id.*, ¶ 166),

"how to retrieve and organize data including location data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data" (*id.*, ¶ 181), "how to retrieve and organize data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data (*id.*, ¶¶ 196, 211, 226, 241).

38.    The claimed systems and methods do not threaten to inhibit innovation. Instead, they address problems that only arose with the advent of wireless devices and communication networks. Gonsalves Decl., ¶¶ 153, 168, 183, 198, 213, 228, 243. The patented inventions do not apply to communication generally, but only to the particular problems of how to retrieve and organize specific types of data, generate alerts, organize the data, and respond to queries, for example. *See id.* According to Dr. Gonsalves, there was never a need to address the problems of retrieving and organizing data and performing the additional claimed processing tasks associated with that data before the proliferation of mobile wireless devices and associated networks. *Id.*

39.    The patented solution is concrete, not abstract. According to Dr. Gonsalves, there are numerous other ways to retrieve, organize, and query data, as described in the claims of the Asserted Patents. "For example, a server could receive a data from a wireless device and simply perform a conventional search. The patent[s] do[] not claim those types of systems or any of the myriad of other communication systems." Gonsalves Decl., ¶¶ 154, 169, 184, 199, 214, 229, 244.

40.    The claimed systems and methods "contain[] many limitations that are not present in a simplistic example of mere communication with a wireless device," including, *inter alia*, tags, tag identifiers, control software, sensors, wireless transceivers, memory, a central authority, and a web interface. Gonsalves Decl., ¶¶ 155, 170, 185, 200, 215, 230, 245.

41.     The claims describe "particular operations to be performed by the system and address[] problems that arise in the realm of computer systems." Gonsalves Decl., ¶¶ 156, 171, 186, 201, 216, 231, 246.

42.     Because the claimed solutions are concrete, not abstract, they do not "threaten to 't[ie] up' a 'building block[] of human ingenuity,' which is the 'concern that drives' the judicial carve-out of 'abstract ideas' from § 101." Gonsalves Decl., ¶¶ 157, 172, 187, 202, 217, 232, 247.

43.     Moreover, even if the claims of the Asserted Patents were determined to be drawn to an abstract idea, they are still patent-eligible because they include an "inventive concept" at least because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." Gonsalves Decl., ¶¶ 160, 175, 190, 205, 220, 235, 250 (citing *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)); *see also* Gonsalves Decl., ¶¶ 164–65, 179–80, 194–95, 209–10, 224–25, 239–40, 254–55.

44.     The claims of the Asserted Patents do not simply recite applying a known business process to a technological environment. Instead, they "address[] problems specific to the new technology of wireless devices" and the problems of how to retrieve and organize certain types of data associated with wireless tags/entities, and to perform additional processing tasks, such as generating alerts based on the retrieved data, organizing the data, ranking data, and querying the data. Gonsalves Decl., ¶¶ 161, 176, 191, 206, 221, 236, 251.

45.     The claims override a routine sequence of events in that they provide a novel system to retrieve and organize data and to perform the additional claimed processing tasks. *See* Gonsalves Decl., ¶¶ 162, 177, 192, 207, 222, 237, 252.

46.    The claims of the Asserted Patents are directed to the inventive combination of computers, processors, data repositories, and tags to track and monitor attributes of individual entities associated with the tags and providing tangible and usable outputs.

47.    The claims of the Asserted Patents improve the functioning of traditional driver monitoring systems. For example, and without limitation, the use of tags, the ability to associate them with objects or entities, and the determination of static, dynamic, and temporal information associated with the objects via the tags, is an improvement over the prior art that was not well-understood, routine, or conventional at the time. The use of intelligent tags to capture data that is then used in a variety of internal functions improves the overall performance and efficiency of the fleet or asset tracking and management system.

48.    Defendants have not obtained a license to any of the Asserted Patents.

49.    Defendants do not have Motedata's permission to make, use, sell, offer to sell, or import products covered by one or more claims of the Asserted Patents or to perform any methods claimed in the Asserted Patents.

50.    Defendants need to obtain a license to the Asserted Patents and cease its ongoing infringement of Motedata's patent rights.

## GENERAL ALLEGATIONS

### Powerfleet Unity Platform

51.    Upon information and belief, Powerfleet makes, uses, sells, offers to sell, and/or imports into the United States methods and systems for storing, retrieving, and managing data for tags as claimed in each of the Asserted Patents. For example, and without limitation, Powerfleet provides for its customers the Unity platform ("Unity").

52. According to Powerfleet, Unity is a fleet intelligence platform capable of ingesting, processing, and enriching data from Powerfleet devices and sensors, as well as third party-devices and sensors, vehicle and infrastructure OEMs, and integration data sources:



Powerfleet Unity, our fleet intelligence platform, is capable of ingesting, processing, and enriching data from Powerfleet devices and sensors, third-party devices and sensors, vehicle and infrastructure OEMs, and integration data sources, resulting in meaningful data insights to improve business operations and advance digital transformation initiatives. Powerfleet Unity's Cognitive Data Engine applies Artificial Intelligence (AI) and Machine Learning (ML) to power traditional operational benefits as well as new data-powered applications to solve our customer's most intractable challenges.

https://www.powerfleet.com/unity/

53. Unity allows Powerfleet customers to manage fleets "from a single pane of glass." In the screenshot seen below, the Unity platform is being accessed through a web browser:



https://www.powerfleet.com/unity-platform-overview/

54.     Powerfleet also offers a downloadable app to Unity customers for use on both iOS and Android mobile devices.



Google Play Store Description




Streamline your fleet operations with effortless oversight of your personnel, vehicles and assets. Gain instant access to real-time insights into your fleet's activities, encompassing safety alerts, live tracking, and telemetry data.

Apple App Store Description

55.    Powerfleet provides a variety of devices for monitoring fleet assets, including gateway devices, video recording devices, and sensors:

 **VEHICLE TELEMATICS**

Vehicle Gateway, DashCam, Driver Feedback Sensor, Compliance and Workflow Management, Keyless Gateway, Micromobility Gateway

 **VIDEO**

DashCam, FreightCam, Digital Video Recorder

 **MATERIAL HANDLING TELEMATICS**

Forklift Gateway (VAC), Pedestrian Proximity Detection, Digital Video Recorder, Forklift Scale, Forklift Safety Light, Speed Manager

 **ASSET TRACKING**

Asset Gateway, Logistics Gateway, Cold Chain Gateway, Container Gateway

 **CONTAINER, CHASSIS, AND TRAILER TRACKING**

Asset Gateway, Logistics Gateway, Logistics Gateway – Solar, Cold Chain Gateway, FreightCam, Temperature Sensor, Mount and Load Sensor

 **COMPLIANCE AND WORKFLOW MANAGEMENT**

Electronic logging device to automatically record driving time and Hours of Service (HOS) records (DVIR), vehicle engine data, movement, and miles driven

https://www.powerfleet.com/

56.    Upon information and belief, Powerfleet Unity allows users to access and organize

tag-related data:

## Vehicle and Asset Visibility

Achieve complete visibility of your vehicles and assets with Powerfleet's solutions. We help you locate vehicles by type, status, events, and availability as well as provide you with insights into vehicle usage and historical events by location.



## Driver Management

With real-time alerts, wide range of monitored maneuvers, and a dedicated driver app, you will always have the complete picture of your fleet and driver performance. Your fleet will be able to reduce offenses that can lead to accidents including harsh acceleration, hard braking while turning, over-speeding, lane-zigzagging and more. Better yet, your organization will be able to turn a losing portfolio into a profitable one.



## Utilization

Right from the start, Powerfleet enables you to cut costs and gain control of your asset, vehicle, and people utilization. Reducing idling and revving and improving load management can help you decrease fuel consumption. You can achieve this through proactive maintenance scheduling, which ensures greater fleet utilization and decreased down time. In addition, our solutions enable you to control and monitor the conditions of the goods in the warehouse as well as on the road – thus preventing them from being compromised or spoiled. We help you to sustainably save across your fleet immediately and continue to increase your savings over time.



https://www.powerfleet.com/visibility-and-resource-management/

57. According to Powerfleet, Unity Platform provides data access via desktop computer or mobile app:

https://web.archive.org/web/20221201014317/https://www.powerfleet.com/unity/



https://apps.apple.com/kz/app/powerfleet-manager/id6464457393

58.    According to Powerfleet, the Powerfleet Unity Platform allows users to view historical data associated with fleet assets that have tags installed or associated with them:



https://web.archive.org/web/20230621033046/https://www.powerfleet.com/visibility-and-resource-management/

59.    According to Powerfleet, it is a leader of internet of things (IoT) software-as-a-service (SaaS) solutions:



https://web.archive.org/web/20230617084110/https://www.powerfleet.com/about/

60.     Each tag in the Powerfleet Unity Platform is represented within the user interface by a identifiers which distinguish each tag from all other tags in the system:



https://web.archive.org/web/20230616213459/https://www.powerfleet.com/regulatory-management-and-compliance/

61.     According to Powerfleet, the Unity Platform allows users to "achieve complete visibility of your vehicles and assets with Powerfleet's solutions. We help you locate vehicles by type, status, events, and availability as well as provide you with insights into vehicle usage and historical events by location":



https://web.archive.org/web/20230621033046/https://www.powerfleet.com/visibility-and-resource-management/

62. According to Powerfleet, the Unity Platform integrates various data-powered applications, a cognitive data engine, and data ingestion layers. Data-powered key applications include safety and security, advanced fuel management, maintenance and performance, regulatory management and compliance, visibility and resource management and sustainability. The platform also incorporates data from multiple sources and uses a cognitive data engine for fleet management.



https://web.archive.org/web/20221201014317/https://www.powerfleet.com/unity/

63.     The Powerfleet Unity Platform provides customers with each of the benefits identified above.

**Fleet Complete Connected Software Platform**

64.     Upon information and belief, Powerfleet makes, uses, sells, offers to sell, and/or imports into the United States methods and systems for storing, retrieving, and managing data for tags as claimed in each of the Asserted Patents. For example, and without limitation, Powerfleet provides for its customers the Fleet Complete Connected Software Platform ("Fleet Complete FMS").

65.     According to Powerfleet, Fleet Complete FMS is an all-in-one fleet management platform allowing users to access all their data and reports by relying on one, easy-to-use fleet management platform:



https://web.archive.org/web/20240808112039/https://www.fleetcomplete.com/products/fleet-management-platform-overview/

66.    The Fleet Complete FMS allows customers to manage fleets "manage your entire fleet in a single interface."



https://web.archive.org/web/20240808112039/https://www.fleetcomplete.com/products/fleet-management-platform-overview/ /

67.     The Fleet Complete FMS also offers a downloadable app to Fleet Complete FMS customers for use on both iOS and Android mobile devices.



68.     The Fleet Complete FMS provides a variety of devices for monitoring fleet assets, including asset trackers, AI dashcams and fleet trackers:



https://web.archive.org/web/20240723133705/https://www.fleetcomplete.com/products/asset-tracker/



https://web.archive.org/web/20240723133705/https://www.fleetcomplete.com/products/asset-tracker/

69.    The Fleet Complete FMS allows users to view historical data associated with fleet assets that have tags installed or associated with them:



[https://www.youtube.com/watch?v=tjeY5-CMKk4](https://www.youtube.com/watch?v=tjeY5-CMKk4) (March 10, 2023)

[Audio voiceover: In HC hub our new history playback feature makes it really nice and easy to understand how a vehicle has traveled over the time period specified.]

70.     The Fleet Complete FMS includes the "FC Hub" which Fleet Complete describes as an "IOT Data Cloud Platform":



https://web.archive.org/web/20240913055840/https://www.fleetcomplete.com/solutions/sustainability/

71.     Each tag in the Fleet Complete FMS is represented within the user interface by a identifiers which distinguish each tag from all other tags in the system:



https://web.archive.org/web/20240723134441/https://www.fleetcomplete.com/products/fleet-tracker/

72.     The Fleet Complete FMS allows users to view information about objects or assets, such as vehicles within a fleet, such as asset name, driver, geofence, and asset group:



https://fleetcomplete.my.salesforce.com/sfc/p/#2B0000008aYH/a/JQ000006H9Zh/2R__w1WK_66d9WGpVxgKj1.sPin0OisFpzarV5yskOw/

73.     The Fleet Complete FMS captures and transforms and transforms real-time vehicle data into actionable insights and makes data-driven decisions that drive results through optimized driver and fleet safety, efficiency, compliance, and sustainability.



https://web.archive.org/web/20240808112039/https://www.fleetcomplete.com/products/fleet-management-platform-overview /

74.    The Fleet Complete FMS provides customers with each of the benefits identified above.

**MiX Telematics MiX Fleet Manager**

75.    Upon information and belief, Powerfleet makes, uses, sells, offers to sell, and/or imports into the United States methods and systems for storing, retrieving, and managing data for tags as claimed in each of the Asserted Patents. For example, and without limitation, Powerfleet provides for its customers the MiX Telematics MiX Fleet Manager ("MiX Telematics MFM").

76.    The MiX Telematics MFM platform provides real-time tracking and a range of tools to more effectively manage drivers, journeys and vehicles:



https://web.archive.org/web/20230928122256/https://mixtelematics.com/us/products/mix-fleet-manager/

77.     The MiX Telematics is hosted in one of several top-tier data centers, and information is accessible online or via a mobile app (for Android or iOS).

78.     The MiX Telematics MFM platform works with at least electronic logging devices (ELD), AI-powered dashcams, the MiX Rovi II (Android-powered, programmable in-cab display), plug 'n play tracking devices and wired or wireless GPS trackers:



https://www.media.mixtelematics.com/downloads/global/product-portfolio-brochure.pdf?utm_source=download&utm_medium=website&utm_content=product-portfolio-brochure

79.    The MiX Telematics MFM allows users to access and organize tag-related data:



https://web.archive.org/web/20230928122256/https://mixtelematics.com/us/products/mix-fleet-manager/

80.    The MiX Telematics MFM allows users to view historical data associated with fleet assets that have tags installed or associated with them:



https://www.youtube.com/watch?v=AmFoM8cZdBk (December 19, 2023)

81.     The MiX Telematics MFM hosts data in several top-tier data centers:



 https://web.archive.org/web/20230928122256/https://mixtelematics.com/us/products/mix-fleet-manager/

82.     Each tag in the MiX Telematics MFM is represented within the user interface by a

identifiers which distinguish each tag from all other tags in the system:

---



https://www.youtube.com/watch?v=WPSx0DuMvtk/

83.    The MiX Telematics MFM allows users to manually or auto-classify trips, push notifications to drivers, perform trip classification in historical tracking, review logbook reports, view a daily trip report including trip type, and perform real-time GPS fleet tracking, among other features.



https://web.archive.org/web/20230928110401/https://mixtelematics.com/us/products/mymix-overview/

84.     The Mix Telematics MFM allows customers to save fuel, improve safety, increase utilization, and enhance customer service.



 https://web.archive.org/web/20230928122256/https://mixtelematics.com/us/products/mix-fleet-manager/

85.     The Mix Telematics MFM provides customers with each of the benefits identified above.

**Summary of Infringement Allegations**

86.     Powerfleet has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Asserted Patents by making, using, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Powerfleet Unity Platform, Fleet Complete FMS, and MiX Telematics MFM, alone or in conjunction with other Powerfleet products, such as the GPS Vehicle Tracking Devices used with the Accused Products.

87.     Motedata has been and continues to be damaged because of Powerfleet's infringing conduct. Powerfleet is therefore liable to Motedata in an amount that adequately compensates Motedata for Powerfleet's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

88.     Additionally, upon information and belief, Powerfleet markets, sells, and/or uses other products and services that are not covered by the claims of the Asserted Patents but that are used or offered with the Powerfleet Unity Platform, Fleet Complete FMS, and MiX Telematics MFM and/or that benefit Powerfleet in ways at least attributable in part to the Accused Products. Accordingly, Motedata is entitled to collect damages from Powerfleet for convoyed sales of certain non-patented products and services.

89.     Powerfleet failed to obtain permission from Motedata to make, use, sell, offer to sell, and/or import products or services incorporating the inventions claimed in the Asserted Patents.

90.     For each count of infringement listed below, Motedata incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '742 PATENT

91.     Motedata incorporates by reference the allegations made in paragraphs 1–90.

92.     Defendant has been and is now directly infringing the '742 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '742 Patent, including but not limited to Claims 1, 2, 3, 5, 6, 8, 9, 10 and 11.

93.     For example, the Accused Products are systems for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The Accused Products are implemented by at least one computer including one or more processors, comprising the elements described in at least Claims 1, 2, 3, 5, 6, 8, 9, 10 and 11.

94.     Additionally, Powerfleet is indirectly infringing the '742 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '742 Patent, including but not limited to Claims 1, 2, 3, 5, 6, 8, 9, 10 and 11. Powerfleet's customers' use of the Accused Products constitutes direct infringement of the '742 Patent. Powerfleet has had knowledge of the '742 Patent at least since the filing of this lawsuit, and its ongoing inducement of its customers' use of the Accused Products in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '742 Patent and with the specific intent to induce ongoing infringement of its claims.

95.     Exemplary claim charts comparing Powerfleet's infringing Accused Products systems/methods to one or more claims of the '742 Patent are attached as **Exhibits 5–7** and are incorporated by reference as if fully set forth herein.

96.    As a result of Powerfleet's infringement of the '742 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '705 PATENT

97.    Motedata incorporates by reference the allegations made in paragraphs 1–90.

98.    Powerfleet has been and is now directly infringing the '520 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '705 Patent, including but not limited to Claims 1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, and 20.

99.    For example, the Accused Products are systems for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The Accused Products are implemented by at least one computer including one or more processors, comprising the elements described in at least Claims 1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, and 20.

100.    Additionally, Powerfleet is indirectly infringing the '705 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '705 Patent, including but not limited to Claims 1, 3, 4, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, and 20. Powerfleet's customers' use of the Accused Products constitutes direct infringement of the '705 Patent. Powerfleet has had knowledge of the '705 Patent at least since the filing of this lawsuit, and its ongoing inducement of its customers' use of the Accused Products in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '705 Patent and with the specific intent to induce ongoing infringement of its claims.

101.    Exemplary claim charts comparing Powerfleet's infringing systems/methods to one or more claims of the '705 Patent are attached as **Exhibits 8–10** and are incorporated by reference as if fully set forth herein.

102.    As a result of Powerfleet's infringement of the '705 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF THE '930 PATENT

103.    Motedata incorporates by reference the allegations made in paragraphs 1–902.

104.    Powerfleet has been and is now directly infringing the '930 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '930 Patent, including but not limited to Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, and 20.

105.    For example, the Accused Products are systems for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The Accused Products are implemented by at least one computer including one or more processors, comprising the elements described in at least Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, and 20.

106.    Additionally, Powerfleet is indirectly infringing the '930 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '930 Patent, including but not limited to Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, and 20. Powerfleet's customers' use of the Accused Products constitutes direct infringement of the '930 Patent. Powerfleet has had knowledge of the '930 Patent at least since the filing of this lawsuit, and its ongoing inducement

of its customers' use of the Accused Products in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '930 Patent and with the specific intent to induce ongoing infringement of its claims.

107.    Exemplary claim chart comparing Powerfleet's infringing Accused Products systems/methods to one or more claims of the '930 Patent are attached as **Exhibits 11–13** and are incorporated by reference as if fully set forth herein.

108.    As a result of Powerfleet's infringement of the '930 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## DEMAND FOR A JURY TRIAL

109.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Motedata demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

110.    WHEREFORE, Motedata respectfully requests that this Court enter judgment in its favor and grant the following relief:

a.    A judgment that Powerfleet has directly infringed one or more claims of each of the Asserted Patents;

b.    A judgment that Powerfleet has indirectly infringed one or more claims of each of the Asserted Patents;

c.    A judgment and order requiring Powerfleet to pay Motedata past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

d.     A judgment and order requiring Powerfleet to pay Motedata reasonable ongoing royalties on a going-forward basis after final judgment;

e.     A judgment and order requiring Powerfleet to pay Motedata pre-judgment and post-judgment interest on the damages award;

f.     A judgment and order requiring Powerfleet to pay Motedata's costs; and

g.     Such other and further relief as the Court may deem just and proper.

Dated: January 20, 2026          Respectfully submitted,

_____

**SHAWN A. LATCHFORD**
State Bar No. 24066603
*Lead Attorney*
**ANDREW J. WRIGHT**
State Bar No. 24063927
**NICHOLAS WYSS**
State Bar No. 24071459
**BRUSTER PLLC**
Heritage II
5001 Lyndon B. Johnson Fwy, Suite 850
Dallas, Texas 75244
877.744.4084 (telephone)
shawn@brusterpllc.com
andrew@brusterpllc.com
nwyss@brusterpllc.com

**COUNSEL FOR PLAINTIFF
MOTEDATA CORPORATION**